UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| JOHNATHAN FORD | * | CIVIL ACTION NO. 07-1012 |
| VERSUS | * | |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment. For reasons assigned below, the decision of the Commissioner is **AFFIRMED**, and the matter **DISMISSED** with prejudice.

**Background & Procedural History**

Johnathan Ford filed the instant applications for disability insurance benefits and supplemental security income payments on December 7, 2004, and July 29, 2005, respectively. (Tr. 40-42, 189-192). He alleged disability since December 7, 2004, due to sarcoidosis. (Tr. 40, 49). The claims were denied at the initial stage of the administrative process. (Tr. 30, 32-35).[1] Thereafter, Ford requested and received an April 5, 2006, hearing before an Administrative Law Judge ("ALJ"). (Tr. 210-229). However, in a September 7, 2006, written decision, the ALJ determined that Ford was not disabled under the Act, finding at Step Five of the sequential

---

[1] The agency denial of Ford's SSI claim does not appear in the instant record.

evaluation process that he was able to make an adjustment to other work that exists in substantial numbers in the national economy. (Tr. 11-22). Ford appealed the adverse decision to the Appeals Council. On April 26, 2007, the Appeals Council denied Ford's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 5-8).

On June 12, 2007, Ford sought review before this court. He alleges the following errors:

(1) the ALJ failed to evaluate plaintiff's credibility; and

(2) the ALJ's residual functional capacity determination is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de*

*novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

>   (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
>   (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See, Boyd v. Apfel, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

The ALJ found at Step Two of the sequential evaluation process that Ford suffers from severe impairments of sarcoidosis and sensorineural hearing loss in the right ear. (Tr. 17, 21). However, the ALJ concluded that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. *Id*.

The ALJ next determined that Ford retained the residual functional capacity for sedentary work reduced by: "a severe hearing loss in the left [sic] ear, but normal hearing in the right [sic] ear; a need to avoid exposure to irritants such as dust, fumes, odors, chemicals, gases, etc.; and

the ability to occasionally climb, balance, knee, crouch, crawl, and stoop." (Tr. 18, 21).[2]

The record confirms that from December 2004 until June 10, 2005, plaintiff continued to work as a personal care attendant. (Tr. 213). Thus, the ALJ evaluated plaintiff's disability as of June 11, 2005, – the first date that Ford did not engage in substantial gainful activity. (Tr. 15). Plaintiff testified that he stopped working on June 10, 2005, because his doctor wrote a statement that he was no longer able to work. (Tr. 213).[3] On July 28, 2005, plaintiff's treating physician, Sreedevi Yerrapragada, M.D., completed a medical evaluation wherein the physician noted that plaintiff was hospitalized on June 13, 2005 due to shortness of breath. (Tr. 134-136).[4] The report indicated that Ford suffered from pulmonary sarcoidosis which reduced his capacity to walk, sit, bend, stand, stoop, pull, speak, travel, and perform activities of daily living by 20-50 percent. *Id*. The report further stated that Ford could not lift weights or return to work full time. *Id*. Nonetheless, Yerrapragada indicated that Ford could sit in an "air/heat controlled environment in a class oriented activity" for six hours per day, five days per week. *Id*.

---

[2] The record clearly shows that the hearing loss is in the **right** ear.

> Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

[3] On July 1, 2005, one of plaintiff's treating physicians, Raymond Cush, M.D., wrote that plaintiff's lung sarcoidosis left him too breathless to work despite his medical regimen. (Tr. 133). Of course, a physician's statement that a claimant is "disabled" or "unable to work" is not a medical opinion, and is afforded no special significance under the regulations. 20 C.F.R. § 404.1527(e); *see also, Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

[4] Ford was hospitalized for one night. (Tr. 147-149).

Yerrapragada further opined that Ford could complete light activities such as filing and sorting materials, sitting, walking, and clerical duties. *Id*. However, he cannot work outside. *Id*.

Plaintiff contends that Yerrapragada's report is inconsistent with the ALJ's residual functional capacity assessment because it included the limitation that Ford sit in an "air/heat controlled environment in a class oriented activity." However, the structure of the form completed by Dr. Yerrapragada reveals that the foregoing activity was not necessarily a limitation upon Ford's capacity for work, but merely the recognition of a minimal ability. The form asked whether Ford was "able" to sit in an "air/heat controlled environment in a class oriented activity." (Tr. 136). Yerrapragada confirmed that Ford retained this ability. On the next question, Yerrapragada added that Ford could also complete light activities such as filing, sorting, sitting, walking, and clerical duties for six hours per day, five days per week. *Id*. Obviously, these tasks require more than sitting in a classroom setting. Moreover, the form did not limit the performance of these tasks to an "air/heat controlled environment." Even if the court accepted plaintiff's argument that Ford needs to work in a temperature controlled environment, this limitation would not significantly erode the occupational base for sedentary work. *See*, SSR 96-9p.

The ALJ's residual functional capacity assessment is further supported by answers to interrogatories and a medical source statement of ability to do work-related activities (physical) completed on May 14, 2006, by a non-examining medical consultant, Thomas Lynn, M.D. (Tr. 182-188).[5] Lynn carefully reviewed the medical evidence and opined that Ford's impairments

---

[5] "An ALJ may properly rely on a non-examining physician's assessment when ... those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991)(quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)).

did not meet or equal a listed impairment. *Id*.[6] Lynn further opined that Ford could occasionally lift ten pounds and frequently lift less than ten pounds. *Id*. He indicated that Ford could stand and/or walk for at least two hours in an eight hour work day, and that sitting was not affected by the impairment. *Id*.[7] Ford's ability to push and pull were limited, and his postural activities were limited to occasional. *Id*.[8] His hearing was limited by unilateral hearing loss. *Id*. He was further limited in his exposure to dust and fumes. *Id*. The ALJ essentially adopted Dr. Lynn's opinion. (Tr. 19).

Plaintiff contends that the ALJ failed to explain why he declined to credit plaintiff's complaints of hemoptysis, shortness of breath, fatigue, and sitting limitations.[9] When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p. The ALJ is also obligated to consider inconsistencies in the evidence and conflicts between the claimant's

---

[6] He acknowledged that the Step Three determination was a close call. *Id*.

[7] Although Dr. Lynn's finding that plaintiff had no sitting limitations is somewhat inconsistent with Dr. Yerrapragada's finding that plaintiff suffered a 20 to 50 percent loss in his ability to sit, Dr. Lynn's finding is supported by plaintiff's own testimony. *See*, fn 9. In any event, Dr. Yerrapragada's limitations are not necessarily incompatible with the capacity for sedentary work. *See*, SSR 96-9p.

[8] Although the ALJ's residual functional capacity determination did not include restrictions on the ability to push and pull, his hypothetical to the vocational expert included this limitation. (Tr. 96). Moreover, restrictions on the ability to push or pull generally have little effect on the sedentary occupational base. SSR 96-9p.

[9] However, plaintiff effectively testified that he can sit for eight hours per day. (*See*, Tr. 221).
To the extent that plaintiff argues that the ALJ failed to solicit pertinent testimony at the hearing, the court observes that plaintiff was represented by counsel at the hearing. The record does not explain why plaintiff's former counsel did not elicit the testimony now deemed crucial by plaintiff.

statements and the remainder of the evidence.  20 C.F.R. § 404.1529(c)(4).  Yet, the ALJ need not follow formalistic rules in his credibility assessment.  *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

In the case *sub judice*, the ALJ specifically recited plaintiff's testimony that he suffers from shortness of breath and coughing spells.  (Tr. 18).  He further noted plaintiff's weight gain from steroid use, liver deterioration, fatigue, and bouts of hemoptysis.  *Id*.  Nonetheless, the ALJ found that Ford's allegations were not totally credible for reasons set forth in the body of the decision.  (Tr. 21).  Immediately following his recitation of plaintiff's complaints, the ALJ summarized the medical evidence and opinions, stating that he assigned great weight to Dr. Yerrapragada's opinion.  (Tr. 18-19).  He further adopted Dr. Lynn's opinion.  *Id*.  In other words, the ALJ favored the assessments and limitations recognized by the medical professionals to the extent that they conflicted with plaintiff's self-professed symptoms and limitations.  The ALJ's discussion met the requirements of 20 C.F.R. § 404.1529.  *See, Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).[10]

---

[10] The ALJ noted that when plaintiff was hospitalized in June 2005, his social history indicated that he smoked tobacco, used street drugs, and occasionally smoked cocaine.  (Tr. 16, 150-151).  At the hearing, plaintiff testified that he stopped smoking in 2000-2001.  (Tr. 216).  At a February 2, 2005, consultative examination, Ford stated that he stopped smoking in 2004, and denied use of drugs.  (Tr. 128).

In sum, the undersigned finds that the ALJ's credibility and residual functional capacity determinations are supported by substantial evidence. The undersigned further finds that the Commissioner's decision as a whole is supported by substantial evidence and is free of legal error.[11] Accordingly,

The Commissioner's decision is **AFFIRMED**, and the matter **DISMISSED** with prejudice.

THUS DONE AND SIGNED, in Monroe, Louisiana, on the 18th day of June, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

With regard to plaintiff's complaints of hemoptysis, it is worth noting that the symptom resolved with medication. (Tr. 141). Although plaintiff reported that the symptom subsequently returned, there is evidence that plaintiff was not inclined to take his medication. (Tr. 157-158).

[11] Plaintiff did not allege any errors with the remaining steps of the sequential evaluation process.